IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEIDI GUIDO,<br><br>    Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | Civil Action No.  11-686 |

AMBROSE, Senior District Judge

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 11). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 12). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 11) and denying Plaintiff's Motion for Summary Judgment. (Docket No. 8).

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In October, 2008, Plaintiff protectively applied for SSI, alleging that since January 1, 2001, she had been disabled due to bipolar disorder, manic depression, and anxiety. (R. 11, 108-111). The state agency denied her claim

---

[1] Plaintiff withdrew her application for Disability Insurance Benefits after consulting with her attorney. (R. 24).

initially, and she requested an administrative hearing. (R. 40-43, 58-62, 63-64). Administrative Law Judge ("ALJ") Ronald A. Marks held a hearing on May 4, 2010, at which Plaintiff was represented by counsel. (R. 22-36). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 33-36). In a decision dated May 21, 2010, the ALJ found that Plaintiff was not disabled under the Social Security Act. (R. 9-17). After exhausting all of her administrative remedies thereafter, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 8 and 11). The issues are now ripe for my review.

## II.   LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B.  **WHETHER THE ALJ ERRED IN FAILING TO GIVE THE APPROPRIATE WEIGHT TO CERTAIN MEDICAL EVIDENCE**

Plaintiff first argues that the ALJ improperly assigned the most weight to the opinions of (1) a consultative examination report by Daniel G. Christo, D.O. and (2) a mental residual functional capacity assessment and Psychiatric Review Technique Form completed by a non-examining State Agency psychologist, John Vigna, Ph.D.  Pl.'s Br. (Docket No. 9) at 4-7.  Specifically, Plaintiff argues that although Dr. Christo makes a few remarks about Plaintiff's mental health status,[2] he is not a trained specialist in mental health impairments and was retained to perform a physical examination of Plaintiff, not to assess her mental health.  Id. at 6.  With respect to Dr. Vigna, Plaintiff argues that the ALJ should not have afforded the report great weight because Dr. Vigna did not personally examine Plaintiff and because he based his assessment on Plaintiff's medical records from a year before her actual hearing.  Id. at 6-7.[3]  Plaintiff also contends that the opinions are inconsistent with her treatment records from the Staunton Clinic or with the report of consultative mental health examiner Dr. Newman.  Id. at 7.

Plaintiff's argument is without merit.  As an initial matter, Plaintiff bases much of her argument on a misreading of the ALJ's opinion.  On page 7 of the ALJ's opinion, he writes:

"[t]hese two opinions have been given great weight as they generally *[sic]*

---

[2] Specifically, Dr. Christo notes that during the consult session Plaintiff was "alert, oriented . . . , pleasant, cooperative with no overt signs of depression, thought disorder, or mania."  (R. 341-342).

[3] Dr. Vigna found, *inter alia*, that Plaintiff was moderately limited in the ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others.  (R. 321-329).

>consistent with each other, they are well supported by the objective medical evidence and because the mental examination findings is *[sic]* within normal limits and are consistent with the evidence as a whole.   (Exhibits 7F, 9F and 10F).

(R. 15).   Plaintiff erroneously argues that the two opinions to which the ALJ refers in this paragraph are the opinions of Dr. Christo and Dr. Vigna.   A close examination of the citations, however, clearly shows that this paragraph of the ALJ's opinion refers to the opinions of Dr. Newman (Exhibit 7F) and Dr. Vigna (Exhibits 9F and 10F).   It does not cite to Dr. Christo's report (Exhibit 11F).   Accordingly, Plaintiff's concern about the ALJ improperly affording Dr. Christo's report greater weight than the other medical evidence is unfounded.[4]

To the extent Plaintiff argues that the ALJ nevertheless erred in assigning "great weight" to Dr. Vigna's report, that argument likewise is without merit.   Although Dr. Vigna did not examine Plaintiff, state agency physicians and psychologists are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence.   Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d Cir. 2007) (quoting 20 C.F.R. § 416.927(f)[5]); see also Cosby v. Comm'r of Soc. Sec., 231 F. App'x 140, 147 n.7 (3d Cir. 2007); Ferris v. Astrue, Civil No. 1:CV-07-0501, 2008 WL 417688, at *12 (M.D. Pa. Feb. 14, 2008) (state agency medical consultants' opinions are entitled to weight).   Here, contrary to Plaintiff's representations, the ALJ expressly states that he credits Dr. Vigna's opinion because it is supported by the objective medical evidence and is consistent with Dr. Newman's report and with the evidence as a whole.   For all of these reasons, the ALJ did not err in crediting the opinion Dr. Vigna here.[6]

---

[4] In any event, Dr. Christo's observations are not inconsistent with either Dr. Vigna's or Dr. Newman's report.

[5] 20 C.F.R. § 416.927(f) was redesignated as 20 C.F.R. § 416.927(e) in February, 2012.

[6] I recognize that Dr. Vigna's finding of only moderate restrictions in the areas of interaction with the public, co-workers and supervisors, and responding appropriately to work pressures in a usual work setting, differs

**C.   WHETHER THE ALJ ERRED BY FAILING TO ACCEPT DR. NEWMAN'S REPORT IN ITS ENTIRETY**

Plaintiff next argues that the ALJ improperly rejected the portion of Dr. Newman's report indicating that Plaintiff had "marked" limitations in her ability to interact appropriately with the public, supervisors and co-workers and to respond appropriately to work pressures in a usual work setting. Pl.'s Br. (Docket No. 9) at 7-9. Specifically, Plaintiff contends that the ALJ improperly engaged in "picking and choosing" only the portions of Dr. Newman's report that supported a finding of non-disability. Id. This argument is unpersuasive.

T. David Newman, Ph.D., examined Plaintiff on or about March 13, 2009. He served not as a treating physician, but as a consultative examiner. After examining Plaintiff, Dr. Newman diagnosed Plaintiff with Bipolar II Disorder, rule out; Alcohol and Cocaine Dependence, in sustained full remission, and Personality Disorder (with borderline features). (R. 305). He opined, among other things, that Plaintiff had marked limitations in her ability to interact appropriately with the public, co-workers, and supervisors, and to respond appropriately to work pressures in a usual work setting. (R. 306). Dr. Newman further indicated that Plaintiff had moderate limitations on her ability to carry out short, simple instructions, carry out detailed instructions, and respond appropriately to changes in a routine work setting. (R. 305-306). Dr. Newman opined that Plaintiff had no limitations on her ability to understand and remember short, simple instructions or detailed instructions, or to make judgments on simple work-related decisions. Id. The ALJ gave "great weight" to all of the Dr. Newman's opinions except for the portions indicating marked limitations. (R. 14).

Although Plaintiff is correct that an ALJ cannot arbitrarily "pick and choose" the portions of

---

from Dr. Newman's finding of marked restrictions in this area. For the reasons set forth in the following section, however, the ALJ properly disregarded that portion of Dr. Newman's report as inconsistent with the remainder of Dr. Newman's report and with the record as a whole.

a physician's opinion that support a finding of non-disability, an ALJ is entitled to reject or assign less weight to medical opinions, or portions thereof, based on factors authorized by the regulations such as, *inter alia*, nature and length of relationship, medical specialty, and consistency. See Bibbs v. Apfel, 3 F. App'x 759, 761 (10th Cir. 2001) (citing 20 C.F.R. § 416.927). Here, the ALJ properly explained appropriate reasons for rejecting the finding of marked limitations, *i.e.*, that the finding was inconsistent with the body of Dr. Newman's report and not supported by the record as a whole. See 20 C.F.R. § 416.927. The ALJ's decision shows that he properly considered all of the medical and other evidence available in the record as a whole, and that substantial evidence supports his conclusion.

Significantly, the ALJ appropriately cites the March 18, 2009, opinion of Dr. Vigna, who reviewed the medical evidence, including Dr. Newman's March 13, 2009 report, and concluded that Dr. Newman's statements concerning Plaintiff's abilities in the areas of making personal and social adjustments overestimated the severity of Plaintiff's limitations and were not consistent with the other medical and non-medical evidence on file. (R. 323). Dr. Vigna noted that Dr. Newman relied heavily on Plaintiff's subjective report of symptoms and limitations but that the totality of the evidence did not support those subjective complaints. Id.[7] Dr. Vigna found that Plaintiff was only moderately (not markedly) limited in the areas of social interaction and opined that, based on the evidence he reviewed, Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. (R. 322-323, 336). Again, state agency psychologists such as Dr. Vigna are considered to be highly qualified psychologists who are also experts in Social Security disability evaluation, and the ALJ must consider their findings as opinion evidence.

---

[7] The ALJ also properly explained why Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible. (R. 13-14).

The ALJ also properly explained in his opinion that Dr. Newman's conclusions regarding Plaintiff's social functioning were not consistent with the body of Dr. Newman's own report. (R. 14). For example, the portion of Dr. Newman's report describing Plaintiff's mental status during the examination states that Plaintiff made a good degree of eye contact, was alert to her surroundings and was appropriately responsive to questions. (R. 14, 304). The report further indicates that although Plaintiff told Dr. Newman that she was anxious, she did not "really present significant aspects of anxiety at least not to the extent that it interferes." Id. Plaintiff's speech was clearly articulated and its content was consistently relevant, rational and coherent. It was not difficult for Dr. Newman to establish a working rapport. Id. Dr. Newman reported that Plaintiff had no psychiatric hospitalizations for her mental impairments; there was no history of perceptual disturbances; and that Plaintiff's abstract thinking and concept formation were intact. (R. 14, 303-304). Dr. Newman found no indication of a formal disturbance of impulse control related to hostility, aggressiveness or sexuality, and described Plaintiff's social judgment as "sufficient for recognizing what is basically required in social situations and adjusting behavior accordingly." (R. 14, 305). Dr. Newman found Plaintiff capable of managing personal funds in a competent manner independently and did not consider her to have a particular difficulty regarding understanding and retaining instructions to perform simple, repetitive tasks. (R. 14, 305). Dr. Newman also concluded that Plaintiff was capable of maintaining concentration and pace and interacting with others, but this may be complicated by labile mood states. Id. These examples from the body of Dr. Newman's report support the ALJ's conclusion that Plaintiff retained the capacity to do some competitive work.

Finally, the ALJ appropriately notes that Dr. Newman's conclusion regarding marked limitation in social functioning is not supported by the other evidence of record. (R. 13-15). Among other things, the ALJ cites medical records from Heritage Valley and the Staunton Clinic

as well as Plaintiff's testimony regarding her activities of daily living.[8]  Id.  This evidence further supports the conclusion that Plaintiff is capable of some type of competitive work.

For all of these reasons, the ALJ did not erroneously discredit the portion of Dr. Newman's report finding marked limitations in social functioning.

### III. CONCLUSION

In short, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she could perform simple 1-2 step routine tasks with low stress; no interaction with the public and co-workers; and only superficial interaction with supervisors.  (R. 12-13).  Contrary to Plaintiff's assertions, I find that the ALJ's RFC finding is supported by substantial evidence of record, including, inter alia, records from Plaintiff's treating mental health providers, the state agency medical consultants, and Plaintiff's self-reported activities of daily living.  For these and all of the above reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.  An appropriate Order follows.

---

[8] These activities include preparing her own meals, cleaning, taking care of her young daughter, shopping for food and baby items, watching television and listening to radio daily, paying bills, counting change, handling a savings account, using a checkbook/money orders; spending time with family members; and going to church.  (R. 13-14).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEIDI GUIDO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No.   11-686 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 26th day of June, 2012, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 8) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge